UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HENRI MAALOUF,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**THE ISLAMIC REPUBLIC OF IRAN** )<br>and )<br>**THE IRANIAN MINISTRY OF INFORMATION** )<br>**AND SECURITY**, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 1:16-cv-280 (JDB) |

**MOTION TO RECONSIDER**

Plaintiff Henri Maalouf respectfully moves this Court to reconsider its Minute Order of August 8, 2016, vacating the Default entered by the Clerk on August 5, 2016 (Doc. No. 15).  The Minute Order directed that the Amended Complaint be served on Defendants in accordance with 28 U.S.C. § 1608(a)(4) before a Default may be entered.  Plaintiff prays that the Order – which the Court entered on its own motion – be set aside, and that the Default be reinstated, for the reasons explained below.

**Procedural History**

Plaintiff Henri Maalouf was the brother of Edward Maalouf,[1] a security guard at the U.S. Embassy in Beirut, Lebanon, who was killed in a terrorist bombing of that diplomatic facility in 1984.  This Court has many times concluded that Defendants were responsible for financing and facilitating that attack, and that they are answerable for damages at the suit of those who survived it, and the family members of those who did not.  *See*, *inter alia*, *Wagner v. Islamic Republic of Iran*, 172 F.

---

[1] The individual members of the Maalouf family referenced in this Motion are occasionally identified by their given names, to avoid ambiguity.

1

Supp.2d 128 (D.D.C. 2001); *Dammarell v. Islamic Republic of Iran*, 281 F. Supp.2d 105 (D.D.C. 2006) (Bates, J.); and *Doe v. Islamic Republic of Iran*, 808 F. Supp.2d 1 (D.D.C. 2011) (Bates, J.).

Some of Edward Maalouf's survivors (his widow, Silva; his son, Rabih; and his three sisters, Houda, Hilda, and Helen) were plaintiffs in the *Doe* class action, and received damages awards (Edward Maalouf was referred to in that action as "John GGDoe"). Others, including his brother Henri, were not. Henri, the principal plaintiff in the current action, has testified that he was living outside Lebanon at the time that the *Doe* class was being assembled, and he did not know that he was eligible to participate. *See* Response to the Order of the Court, filed on April 25, 2016 (Doc. No. 9), Attachment 1 (Declaration of Henri Maalouf).

Henri initiated this action on February 17, 2016. Undersigned counsel served Defendant the Islamic Republic of Iran ("Iran") with the Complaint and associated documentation pursuant to 28 U.S.C. § 1608(a)(4) on May 17, 2016. Iran did not answer the Complaint, as it has not answered any of the complaints filed in this Court relating to the 1983 and 1984 Beirut Embassy bombings. Seventy-nine days after the Complaint was served, Plaintiff requested that the Clerk of Court note that Defendant Iran had defaulted (Doc. No. 14), and the Clerk entered the Default the next day (Doc. No. 15).

But there were other Maalouf family members who survived Edward who had still not filed claims in this Court for the injuries and suffering they endured because of the murder of their loved one. In particular, both of Edward's parents – his father, Elias Maalouf, and his mother, Olga Aftemoos – as well as his brother, Gaby Maalouf, did not participate as plaintiffs in litigation claiming damages resulting from the Beirut Embassy bombings.[2] The reasons for this were clear:

---

[2] Actually, a claim on behalf of the mother of John GGDoe (styled "Jane Parent1 GGDoe") **was** brought in the initial complaint in *Doe*. *See Doe v. Islamic Republic of Iran*, No. 1:08-cv-540 (D.D.C.), Doc. No. 3, ¶ 160. But for reasons that cannot be explained, and that were nowhere discussed, that claim was dropped in the First Amended Complaint, and was never reinstated. *See id.*, Doc. No. 13, ¶¶ 185-89. The final version of the Complaint – that is, the one on which the damages award was

2

although they survived Edward, all three of those individuals died before the *Doe* case was initiated, no one was on notice that he or she might claim on behalf of their decedents.

The parents and Gaby died intestate, and upon their deaths none had (the equivalent of) formal estate administration proceedings in Lebanon. After this case was initiated, Henri obtained the approval of all of the heirs who might be entitled to a share of any assets of the parents' and Gaby's estates to bring suit against Iran in the names of those estates.

Given that Iran had not (and still has not) answered the Complaint herein, Henri was entitled to amend as of right, under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. And he did so on July 21, 2016 (Doc. No. 13), after Defendant Iran was already in default. The Default was formally entered on August 5, 2016.

Shortly thereafter, the Court, on its own motion, filed the Order whose reconsideration is now sought. It reads in full as follows:

> Upon consideration of the entire record, and on the Court's own motion, it is hereby ORDERED that [Doc. No. 15] the Clerk's Entry of Default is VACATED. Although defendant was served with the original complaint on May 17, 2016, on July 21, 2016, plaintiffs filed an amended complaint. The amended complaint "supersede[d] the original complaint, thereby making the first complaint a 'dead letter' devoid of any legal effect and making the new complaint the operative document moving forward." *Pinson v. U.S. Dep't of Justice*, 69 F.Supp.3d 108, 113 (D.D.C. 2014). The filing of an amended complaint accordingly moots a request for entry of default or default judgment. *See, e.g., Nelson v. Nationwide Mortgage Corp.*, 659 F. Supp. 611, 615 (D.D.C. 1987). Entry of default will therefore not be appropriate here unless defendant fails to timely respond to the amended complaint (once it has been served). SO ORDERED. Signed by Judge John D. Bates on 8/8/2016.

Plaintiff Henri Maalouf respectfully submits that this Order is inconsistent with numerous decisions of this Court, holding virtually without exception that amended complaints under the

---

based – did not include the mother of John GGDoe as a plaintiff, and no award to her was entered by the Court. *See id.*, Doc. No. 103. The father and Gaby were never listed as parties plaintiff in *Doe* or any other case.

3

Foreign Sovereign Immunities Act ("FSIA") do **not** need to be served pursuant to § 1608(a)(4) if they do not add substantive new claims. And the Amended Complaint in this case does not add anything of substance: it simply brings other family members of the victim Edward Maalouf to the list of those who have claimed, or who are now claiming, damages on account of his murder by Defendants' agents.

There is no secret as to the reasons Plaintiff requests that the Court waive the obligation that he serve the Amended Complaint through diplomatic channels. The Department of State charges $2,275 for each package to be delivered (through the U.S. Embassy Bern, the Swiss Foreign Ministry, and the Swiss Embassy Tehran[3]) to the Iranian Ministry of Foreign Affairs. The Complaint, summons, and notice of suit must be translated into Farsi, incurring an additional cost on the order of $500-1,000. Adding the charges for delivery from the courthouse to the State Department, diplomatic service costs plaintiffs between $3,500 and $4,000.

Service takes months to accomplish (the original Complaint was transmitted by the Clerk of this Court to the Department of State on February 23, 2016 (Doc. No. 6), and process was served on Iran only on May 17 (Doc. No. 11), nearly three months later). And, of course, the whole exercise is one in futility, since Iran has never responded in any of the cases before this Court alleging its involvement in terrorist attacks on U.S. diplomatic premises in Beirut.

Plaintiff Henri Maalouf asks for a reconsideration of the August 8 Order because he believes it to be at variance with the consistent practice of this Court, but also because compliance with that Order would cost him money he does not have, as well as wasting months in his effort to secure a default judgment.[4]

---

[3] In the absence of diplomatic relations between Washington and Tehran, Switzerland handles U.S. interests in Iran, and Pakistan represents Iranian interests in the United States.

[4] Obtaining an unappealable, and therefore final, default judgment entitles plaintiffs to make claims against the Victims Compensation Fund, established by Congress to provide some measure of financial recognition for the suffering of those whose loved ones working in service to the United

**Argument**

It has been the consistent position of this Court for over a decade that once an FSIA defendant has been served with the papers required to initiate a case under that statute, a subsequent amendment to those papers permitted by the Rules need not be served under 28 U.S.C. § 1608(a) so long as it does not add new substantive claims to what was laid out in the original complaint. This Court has so held at least six times since 2005. And here, the Amended Complaint surely adds nothing new to which Defendants might respond differently from whatever might be their answer to the allegations in the original Complaint.

In *Dammarell v. Islamic Republic of Iran*, 370 F.Supp.2d 218 (D.D.C. 2005) (Bates, J.), for example, this Court specifically addressed this very issue, and concluded that:

> **section 1608 is inapplicable** in the setting where the defendant foreign state has failed to appear, and is therefore in default, and **where an amendment does not add any claims** but instead clarifies existing claims.
>
> Several considerations lead the Court to this result. First, the text of section 1608 appears to anticipate formal service only of an initial pleading. The statute provides that "[s]ervice in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state" in accordance with four enumerated methods (to be attempted in sequence). 28 U.S.C. § 1608(a)(1)-(a)(4). For each of the listed methods, the statute only requires the delivery of "a copy of the summons and complaint" and in some instances also a "notice of suit." *Id.* The text of the statute therefore contemplates service only of the complaint that initiates a suit (when a summons normally issues), along with perhaps a complaint later in the case that adds a foreign state as a defendant for the first time and therefore would also require issuance of a summons.
>
> The legislative history of the provision confirms this reading of the statute. The House Report for the FSIA explains that section 1608 is designed to "insure that private persons have adequate means for commencing a suit against a foreign state to seek redress in the courts"; distinguishes section 1608 from the prevailing means at the

---

States were killed by Iranian-sponsored terrorists. *See* Justice for United States Victims of State Sponsored Terrorism Act, Pub. Law 114-113, 42 U.S.C. § 10609.

time of the enactment of the statute for "attempting to commence litigation against a foreign state"; and notes that the "notice of suit" that must be served in the fourth method is "designed to provide a foreign state with an introductory explanation of the lawsuit, together with an explanation of the legal significance of the summons, complaint, and service." H.R. Rep. No. 94-1487, at 11, 23-25, available at 1976 U.S.C.C.A.N. 6604, 6609-10, 6622-25. These statements suggest that **section 1608 is concerned with service of the initial complaint that commences a lawsuit, and not with ensuing pleadings or papers**.

At least as to the defendants in this case, dispensing with the requirement of formal service under section 1608 is also consistent with Federal Rule of Civil Procedure 5(a), which provides that "[n]o service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4." Fed.R.Civ.P. 5(a). The defendants in this case are in default, and this Court does not believe that the addition to a complaint of the detail required in *Acree* [*v. Republic of Iraq,* 370 F.3d 41 (D.C. Cir. 2004)] constitutes the assertion of a "new or additional claim" within the meaning of Rule 5(a). Therefore, service of the amended complaint in the circumstances of this case is unnecessary under Rule 5(a). *See Hill v. Republic of Iraq*, 175 F.Supp.2d 36, 38 n. 2 (D.D.C. 2001) (appearing to allow filing of amended complaint without formal service after default).

Finally, the Court notes that **formal service under section 1608** – which often entails the translation of a filing into a foreign language, mailing of the filing by the Clerk of the Court, service of the filing on the foreign state by the State Department through diplomatic process, and a long delay in the proceedings while all of this transpires – **places a significant burden on plaintiffs**, the executive branch, and the Court. **Expanding the reach of section 1608 to situations outside the four corners of the statute would come at a serious cost.** The Court does not rule out the possibility that additions to a complaint could be so substantial that the amended complaint must be served on a foreign state under section 1608 even though the foreign state is not being added to the complaint for the first time. However, when default has been entered against a foreign state defendant, and the amended complaint does little more than provide the particularity required by *Acree*, there is no requirement that the plaintiff serve the amended complaint pursuant to section 1608.

370 F.Supp.2d 218, 223–25 (emphases added).

This is not the kind of case that the Court contemplated in *Dammarell* as a possibility: the one in which "additions to a complaint [are] so substantial that the amended complaint must be served on a foreign state under section 1608 even though the foreign state is not being added to the complaint for the first time." 370 F.Supp.2d 218, 225. In *Dammarell*, the amendment added claims under the revised terrorism exception adopted by Congress after the D.C. Circuit held that the original enactment did not provide a private cause of action. *Cicippio-Puleo v. Islamic Republic of Iran,* 353 F.3d 1024 (D.C. Cir. 2004). There were no new claims, but simply a new statutory basis for framing existing ones. Here, there are no new claims, but simply new claimants alleging exactly the same things as were contained in the original Complaint.

Judge Lamberth followed *Dammarell* in *Blais v. Islamic Republic of Iran*, 459 F.Supp.2d 40 (D.D.C. 2006). There, the plaintiffs amended their complaint for a third time, to add State causes of action to those grounded in Federal law. The Court found those changes not to be "substantial" ones that might require re-service under § 1608. The Judge wrote:

> As compared to the initial complaint, the third amended complaint served to put the remaining defendants on notice that the claims sought by plaintiffs were grounded in state substantive law as well as in the federal statutory scheme. It also sought redress from only those three defendants who had been served. Even were these changes characterized as substantive, Iran, the MOIS and the IRGC had fair notice of the allegations and relief sought, because the changes to the third amended complaint were not substantial. *See Dammarell v. Islamic Republic of Iran*, 370 F.Supp.2d 218, 225 (D.D.C. 2005) (Bates, J.) (noting that only "additions to a complaint [which are] substantial" might warrant the service of an amended complaint). Accordingly, this Court will not require plaintiff to serve the amended complaint.

459 F. Supp. 2d 40, 46. *See also In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 104–07 (D.D.C. 2009) (Lamberth, J.)

Judge Friedman came to the identical conclusion in *Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8 (D.D.C. 2009). Again, the specific issue before the Court was the need to re-serve

7

when the statutory basis for the cause of action shifted, but the ruling was applicable equally to the situation presented by the instant case:

> **Plaintiff's amended complaint did not substantially change the allegations in the original complaint and did not add new defendants. The causes of action are essentially the same**, but, as explained below, are now available under another source of law – namely, Section 1605A. **The Court will not require the plaintiff to serve the amended complaint**. *See Blais v. Islamic Republic of Iran*, 459 F.Supp.2d at 46 (amended FSIA complaint which added causes of action based on state substantive law as well as the federal statutory scheme need not be served on foreign sovereign in default); *Dammarell v. Islamic Republic of Iran*, 370 F.Supp.2d at 224.

667 F.Supp.2d 8, 19–20 (emphasis added). *See also Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F.Supp.2d 48, 74 n.7 (D.D.C. 2011) ("When Judge Kessler ordered that the *Baker* complaint could be amended to include plaintiffs' § 1605A claims, she also ordered that no separate service was necessary, **as no new claims were asserted**." Emphasis added.).

More recently, Judge Lamberth summed up these consistent holdings of the District Court in *Shoham v. Islamic Republic of Iran*, 922 F.Supp.2d 44, 47 (D.D.C. 2013), as follows: "Where a plaintiff serves a complaint on a foreign state defendant under the FSIA, the foreign state defaults, and then the plaintiff files an amended complaint, service of the new complaint is only necessary if the changes are 'substantial.'"

In *Shoham*, the principle did not apply because the plaintiff was seeking to bring in new defendants, who had not yet been served at all and who were therefore not in default. Here, however, Plaintiff Henri Maalouf claims that he suffered significantly through the sudden death of his brother. Like the plaintiffs in *Doe*, he is prepared to detail the emotional pain and trauma to which he and other members of his family were subjected. The claims of the three Plaintiffs in the Amended Complaint are precisely the same: Gaby (like Henri, and like the three sisters who were plaintiffs in *Doe*) endured the murder of his brother; while Edward's parents underwent the

8

unspeakable pain of being forced to bury their son. And they have joined no new Defendants who might claim, as in *Shoham*, that they had previously not been on notice of the suit.

The Complaint alleged that Iran was responsible for the bombing of the U.S. Embassy, and caused Edward's death. The Amended Complaint makes the identical allegation. The only difference is that the Amended Complaint alleges that family members other than Henri, and other than the three sisters, also suffered from Defendants' wanton and murderous acts.

The FSIA caselaw referenced here demonstrates that *Pinson v. U.S. Dep't of Justice*, 69 F.Supp.3d 108, 113 (D.D.C. 2014), on which the Minute Order relies, is inapplicable. Moreover, *Pinson* itself does not suggest that an amended complaint must be served, like an original complaint, according to Rule 4 of the Federal Rules of Civil Procedure (in the FSIA context, § 1608 governs in lieu of Rule 4). The filing of an amended complaint does not indicate that the entire litigation process must begin again. What *Pinson* stands for is the unexceptional proposition that the claims of an original complaint that are not in the amendment are no longer before the court.[5]

Here, there were no claims dropped, and the only claims added were ones deriving from precisely the same factual allegations as were in the original. So *Pinson* is inapposite.

And *Nelson v. Nationwide Mortgage Corp.*, 659 F.Supp. 611, 615 (D.D.C. 1987), also cited in the Minute Order, is inapplicable for three reasons. First, in *Nelson*, the amended complaint sought to bring in an entirely new claim and to recast the plaintiff's existing claims, and her motion for leave to file it was granted. While she was pursuing new causes of action, this Court, not surprisingly, would not permit her also to seek a default judgment on the claims that were now superseded. Here, there has been no recasting, reconfiguration, or revision of existing claims, nor has any new cause of action been asserted.

---

[5] All of the FSIA caselaw discussed above would be incorrect were it the law that the filing of an amendment to a complaint renders default proceedings under the original complaint moot.

Second, the Minute Order cites *Nelson* for the proposition that "[t]he filing of an amended complaint accordingly moots **a request for entry of default** or default judgment" (emphasis added). But there is nothing in *Nelson* that suggests that a request **for entry of default** was mooted. Indeed, there was no such request pending at the time of the *Nelson* Court's decision: what was pending was **a motion for default judgment**. The Court did not set aside an existing default: it declared moot a motion for default judgment on a superseded claim.

That is entirely different from the situation presented here. There has (yet) been no motion for default judgment, and the default entered with respect to Defendant Iran remains – or should remain – in full force and effect, because Iran, in fact, failed to respond to the Complaint within the 60 days provided by 28 U.S.C. § 1608(d). That is all that the entry of default recorded.

Finally, even if *Nelson* could be read as asserting that a request for entry of default is mooted by the filing of an amended complaint, it would still be inapplicable here, because there was no such request pending. The request was made later, and was routinely granted by the Clerk because the (unamended) Complaint had gone unanswered for more than 60 days. Nothing in *Nelson* suggests that a default properly entered may be set aside.

Because the Amended Complaint added no new substantive claims against Iran, but simply noted that Henri Maalouf was not the only member of his family to suffer from the murder of his brother Edward, it is respectfully submitted that the consistent caselaw of this Court supports him in his effort to amend his Complaint without having to undergo the costs and delay of re-serving it on Iran.

**Conclusion**

For all of the foregoing reasons, Plaintiff Henri Maalouf respectfully asks this Court to reconsider its Minute Order of August 8, to set it aside, and to reinstate the entry of default noted by the Clerk of Court on August 5, 2016.

Respectfully submitted,

/s/
_____
Steven M. Schneebaum
  D.C. Bar No, 956250
STEVEN M. SCHNEEBAUM, P.C.
1776 K Street, N.W.; Suite 800
Washington, D.C. 20006
  Tel.: (202) 742-5900
  Email: sms@smslawdc.com

Of counsel: Allan Gerson
     AG-INTERNATIONAL LAW PLLC
     2131 S Street, N.W.
     Washington, D.C. 20008

     Cynthia L. McCann
     STEVEN M. SCHNEEBAUM, P.C.
     1776 K Street, N.W.; Suite 800
     Washington, D.C. 20006

Dated: August 29, 2016.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HENRI MAALOUF,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16-cv-280 (JDB) |
| ) | |
| **THE ISLAMIC REPUBLIC OF IRAN** ) | |
| and ) | |
| **THE IRANIAN MINISTRY OF INFORMATION** ) | |
| **AND SECURITY**, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Upon consideration of Plaintiff's Motion to Reconsider the Court's Minute Order of August 8, 2016, it appearing to the Court that reconsideration is justified and that the Default entered by the Clerk on August 5, 2016, should be reinstated, it is hereby this _____ day of September, 2016, ORDERED that the Motion be, and the same hereby is, GRANTED, and that the Clerk is directed to enter in the docket of this case a notice that Defendant the Islamic Republic of Iran, not having answered the Complaint within the period provided by law, is in Default.

_____
John D. Bates
United States District Judge