UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HENRI MAALOUF, et al.,

    Plaintiffs,

        v.

ISLAMIC REPUBLIC OF IRAN, et al.,

    Defendants.

Civil Action No. 16-0280 (JDB)

## MEMORANDUM OPINION

This case arises out of the death of Edward Maalouf, a U.S. government employee who was tragically killed in the 1984 terrorist bombing of the U.S. Embassy in Beirut, Lebanon. Edward's estate, widow, three sisters, and son participated in an earlier lawsuit against the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Intelligence and Security ("MOIS") and were awarded both compensatory and punitive damages as a result. See Doe v. Islamic Republic of Iran, 808 F. Supp. 2d 1 (D.D.C. 2011); Estate of Doe v. Islamic Republic of Iran, 943 F. Supp. 2d 180 (D.D.C. 2013). When Edward's oldest brother, Henri Maalouf, learned of the Doe judgment years later, he filed the instant action on behalf of himself and the estates of his parents and his younger brother Gaby (collectively "plaintiffs") against Iran and MOIS. See Compl. [ECF No. 1]; Am. Compl. (July 21, 2016) ("First Am. Compl.") [ECF No. 13]. Plaintiffs then chose to litigate their action against Iran only, who—as in other similar lawsuits—never appeared in this Court.[1]

This Court previously considered plaintiffs' motion for a default judgment against Iran in

---

[1] Plaintiffs served their complaint and their first amended complaint on Iran only. See U.S. State Dep't Letter (June 28, 2016) [ECF No. 11] (confirming service of plaintiffs' complaint on the Islamic Republic of Iran); U.S. State Dep't Letter (Aug. 30, 2017) [ECF No. 28] (confirming service of plaintiffs' first amended complaint on the Islamic Republic of Iran). Likewise, plaintiffs presently move for a default judgment against Iran only. See Pls.' Mot. for Default J. ("Pls.' Mot.") [ECF No. 31] at 1 (seeking a "default judgment against Defendant the Islamic Republic of Iran" without mention of MOIS).

1

February 2020, concluding that although "plaintiffs ha[d] stated valid causes of action [against Iran] under state and/or foreign law," plaintiffs had not "specif[ied] in their complaint or otherwise a particular cause of action arising out of a specific source of law," as binding D.C. Circuit case law requires.  Maalouf v. Islamic Republic of Iran, Civ. A. No. 16-0280 (JDB), 2020 WL 805726, at * 1, *7 (D.D.C. Feb. 18, 2020) (internal quotation marks and citation omitted); see also Acree v. Republic of Iraq, 370 F.3d 41, 59 (D.C. Cir. 2004), abrogated on other grounds by Republic of Iraq v. Beaty, 556 U.S. 848 (2009) ("A plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law.").  Now that plaintiffs have amended their complaint to plead specific causes of action under D.C. law, see Am. Compl. (June 16, 2020) ("Fourth Am. Compl.") [ECF No. 58] ¶¶ 42, 46, this Court concludes, for the reasons explained below, that plaintiffs are entitled to a $15 million judgment against Iran.

**Background**

The Court assumes familiarity with its prior decision, which sets forth the factual and procedural background of this case in greater detail.  See Maalouf, 2020 WL 805726, at *1–2.  Hence, only a brief description of the key facts follows.

On January 19, 1984, President Reagan "designated Iran a state sponsor of terrorism" in response to its role in sponsoring several terrorist attacks in Lebanon, including the 1983 bombing of the U.S. embassy in Beirut.  Dammarrell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 113 (D.D.C. 2003).  Months later, a second bomb exploded at the U.S. embassy annex in East Beruit, killing at least eleven people and injuring over fifty.  Doe, 808 F. Supp. 2d at 7.  Edward Maalouf, a twenty-six-year-old security guard at the U.S. embassy, was among those who died in that attack.  Fourth Am. Compl. ¶¶ 23, 31; Decl. of Pl. Henri Maalouf ("Henri Maalouf Decl.") [ECF No. 31-1] ¶ 1.

In a series of prior cases brought by victims and their families under the "terrorism exception" in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–11, this Court has held Iran liable for compensatory and punitive damages arising out of the Beirut embassy bombings under different sources of federal and state law.  See, e.g., Doe, 808 F. Supp. 2d at 21–23; Salazar v. Islamic Republic of Iran, 370 F. Supp. 2d 105, 113–15 (D.D.C. 2005).  The instant suit is nearly identical to the Doe case but involves a different set of plaintiffs.  Edward's estate, as well as his widow, three sisters, and son, all participated in the Doe litigation and received compensatory and punitive damage awards under D.C. law as part of the Court's final judgment in May 2013.  See Estate of Doe, 943 F. Supp. 2d at 183–84; Henri Maalouf Decl. ¶ 7.  Edward's brother Henri, however, only learned of the Doe suit years later, at which time he sought, on behalf of himself and the estates of his brother Gaby and his parents, Elias and Olga, to bring the instant action.  See Henri Maalouf Decl. ¶¶ 52–53.  Elias, Olga, and Gaby each survived Edward, but passed away in 1986, 2000, and 2009, respectively.  Id. ¶¶ 2–5.  Henri presently resides in London.  Id. ¶ 5.

Plaintiffs effected service of their first amended complaint on Iran on August 9, 2017 in accordance with 28 U.S.C. § 1608(a)(4).  See U.S. State Dep't Letter (Aug. 30, 2017).  The Clerk of Court declared Iran in default on October 16, 2017.  See Default [ECF No. 30].  This Court set aside that default in March 2018 and dismissed plaintiffs' action as untimely.  Maalouf v. Islamic Republic of Iran, 306 F. Supp. 3d 203, 213 (D.D.C. 2018).  The D.C. Circuit, however, reversed that dismissal, holding that a district court "lacks authority to sua sponte raise a forfeited statute of limitations defense in a FSIA terrorism case, at least where the defendant sovereign fails to appear."  Maalouf v. Islamic Republic of Iran, 923 F.3d 1095, 1101 (D.C. Cir. 2019).

The Court then appointed a special master to make recommendations regarding plaintiffs'

claimed damages.  See Order (August 29, 2019) [ECF No. 41].  After receiving the special master's report, see Redacted R. & R. of Special Master ("Special Master Report") [ECF No. 47], the Court considered plaintiffs' motion for a default judgment for a second time in February 2020.  The Court concluded that although plaintiffs lacked a federal cause of action under § 1605A(c) of FSIA, they could "rely on 'applicable state and/or foreign law'" to assert their claims against Iran.  Maalouf, 2020 WL 805726, at *6 (quoting Doe, 808 F. Supp. 2d at 20).  Thus, rather than deny plaintiffs' motion, the Court allowed plaintiffs to amend their complaint to specify "a particular cause of action arising out of a specific source of law other than FSIA," id. (quoting Dammarell v. Islamic Republic of Iran, Civ. A. No. 01-2244 (JDB), 2005 WL 756090, at *2 (D.D.C. Mar. 29, 2005)).[2]

Plaintiffs subsequently amended their complaint three times, most recently filing a fourth amended complaint on June 16, 2020.  The fourth amended complaint asserts claims against Iran and MOIS under § 1605A(c) for causing Edward's death, and under both § 1605A(c) and D.C. law for loss of solatium and intentional infliction of emotional distress.  See Fourth Am. Compl. ¶¶ 32–35, 42.  Plaintiffs' motion for a default judgment against Iran is once again before this Court and ripe for consideration.

## Legal Standard

FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989).  While foreign states are generally immune from the jurisdiction of U.S. courts, see Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); see also 28 U.S.C. § 1604, FSIA provides for federal court jurisdiction over

---

[2] Shortly thereafter, plaintiffs' counsel withdrew from this case, see Min. Order (Mar. 12, 2020), and the Court granted Henri's motion to proceed pro se on behalf of himself and his family members' estates, see Min. Order (Mar. 17, 2020).

foreign states under a limited set of exceptions. Subject matter jurisdiction exists if the defendant's conduct falls within a specific statutory exception. See 28 U.S.C. §§ 1330(a), 1604. And personal jurisdiction exists if the plaintiff properly serves the defendant in accordance with 28 U.S.C. § 1608. See id. § 1330(b).

In order for a district court to enter a default judgment against a foreign state, "the claimant [must] establish[] his claim or right to relief by evidence satisfactory to the court." Id. § 1608(e). The "satisfactory" evidence standard can be met through "uncontroverted factual allegations" supported by "documentary and affidavit evidence." Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (citation omitted). A court may also "take judicial notice of any fact 'not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,'" including facts established in related proceedings and other court records. Id. (quoting Fed. R. Evid. 201(b)). "The district court . . . has an unusual degree of discretion over evidentiary rulings in a FSIA case against a defaulting state sponsor of terrorism," and "only where the court relies upon evidence that is both clearly inadmissible and essential to the outcome has it abused its discretion." Owens v. Republic of Sudan, 864 F.3d 751, 785–86 (D.C. Cir. 2017).

"To obtain damages against a non-immune foreign state under the FSIA, a plaintiff must prove that the consequences of the foreign state's conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of damages by a reasonable estimate.'" Salazar, 370 F. Supp. 2d at 115–16 (quoting Hill v. Republic of Iraq, 328 F.3d 680, 681 (D.C. Cir. 2003)).

**Analysis**

**I. Jurisdiction**

In its prior opinion, the Court determined that subject matter jurisdiction over this case exists under FSIA's "terrorism exception," set forth in 28 U.S.C. § 1605A. See Maalouf, 2020 WL 805726, at * 3. As relevant here, that exception applies when (1) the defendant foreign state participated in an "extrajudicial killing" or provided "material support or resources for such an act," see 28 U.S.C. § 1605A(a)(1); (2) the foreign state was "designated as a state sponsor of terrorism at the time" of the terrorist act and remains so designated at the time of the lawsuit, see id. § 1605A(a)(2)(A)(i)(l); and (3) the claimant or victim is a U.S. national, a member of the armed services, or "otherwise an employee of the Government of the United States" or a government contractor, acting within the scope of his employment at the time of the terrorist act, see id. § 1605A(a)(2)(A)(ii).

All three requirements are satisfied in this case. The Court already has concluded that Edward's death was an "extrajudicial killing" for which Iran and its agents provided material support. See Maalouf, 2020 WL 805726, at *3; Doe, 808 F. Supp. 2d at 13–16. Iran was designated a "state sponsor of terrorism" at the time of the attack and remains so designated today. See Maalouf, 2020 WL 805726, at *3; State Sponsors of Terrorism, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism/ (last visited Jan. 22, 2021). And Edward Maalouf, the victim in this case, was a U.S. government employee acting within the scope of his employment as a security guard at the time of the bombing. See Maalouf, 2020 WL 805726, at *3; Doe, 808 F. Supp. 2d at 13.

The Court also previously determined that personal jurisdiction exists over Iran because plaintiffs properly served Iran with their first amended complaint on August 9, 2017 via diplomatic

channels. See Maalouf, 2020 WL 805726, at *3 (concluding that "service was properly effected on Iran" in accordance with 28 U.S.C. § 1608(a)(4)). Although plaintiffs have since amended their complaint, this Court already has explained that "service of [the] Fourth Amended Complaint [was] not required pursuant to 28 U.S.C. § 1608 and Fed. R. Civ. P. 5(a)(2)." See Min. Order (Oct. 2, 2020).

"[A]dditions to a complaint [which are] substantial" might warrant additional service of process under 28 U.S.C. § 1608. Dammarell v. Islamic Republic of Iran, 370 F. Supp. 2d 218, 225 (D.D.C. 2005). But a plaintiff is not obligated to serve an amended complaint on a foreign state where the "state has failed to appear, and is therefore in default, and where an amendment does not add any claims but instead clarifies existing claims." Id. at 224. Here, the fourth amended complaint adds to the first amended complaint in three different respects: (1) by grounding plaintiffs' causes of action in D.C. law; (2) by rephrasing and reasserting facts alleged elsewhere in the complaint; and (3) by incorporating additional discussions of prior court decisions concerning the Beirut embassy bombings.[3]

The first addition does not require service of the fourth amended complaint because "identify[ing] a particular cause of action arising out of a specific source of law," only serves to "clarif[y] existing claims." See id. at 223–24; see also Blais v. Islamic Republic of Iran, 459 F. Supp. 2d 40, 46 (D.D.C. 2006) (service not necessary where amended complaint put "defendants on notice that the claims sought by plaintiffs were grounded in state substantive law"). The second and third additions likewise are not "substantial" changes that necessitate service of the fourth

---

[3] The fourth amended complaint also deletes certain content from the first amended complaint, namely plaintiffs' request for prejudgment interest and punitive damages. These deletions also do not obligate plaintiffs to serve the fourth amended complaint. See Prevatt v. Islamic Republic of Iran, 421 F. Supp. 2d 152, 155 (D.D.C. 2006) (finding service of the amended complaint "not necessary" where amended complaint "simply deleted some of the references and information that was contained in the initial complaint," including a wrongful death count). Furthermore, although the fourth amended complaint purports to "add[] three additional parties," see Fourth Am. Compl. ¶ 3, those parties were actually added in the first amended complaint, see First Am. Compl. ¶ B, 21.

amended complaint at this time.  See Dammarrell, 370 F. Supp. 2d at 224; see also HostLogic Zrt. v. GH Int'l, Inc., Case No. 6:13-cv-982-Orl-36KRS, 2013 WL 12394254, at *1 (M.D. Fla. Dec. 17, 2013) (no service required where amended complaint was largely identical, except it added some factual detail and additional allegations); Orocovis Petroleum Corp. v. Puerto Rico Ports Auth., Civ. No. 08–2359 (GAG/BJM), 2010 WL 3420004, at *2 (D.P.R. Aug. 2, 2010) (no service required where "amended complaint contains greater detail than the original," but "most of that detail is . . . a reiteration of the facts section found in the original complaint").  Hence, as the Court previously concluded, plaintiffs need not effect service of the fourth amended complaint until after final judgment is entered.

## II. Iran's Liability for the 1984 Beirut Embassy Bombing

With jurisdiction established, the Court turns to plaintiffs' causes of action and Iran's liability for the 1984 Beirut embassy bombing.  Plaintiffs sue Iran for loss of solatium and intentional infliction of emotional distress (IIED) under both 28 U.S.C. § 1605A(c) and D.C. law, as well as for wrongful death under § 1605A(c).  See Fourth Am. Compl. ¶¶ 32–35, 42.  As the Court has already determined, because plaintiffs are citizens of Lebanon, see id. ¶¶ 32–35, and do not fall into the other categories specified in § 1605A(c), they cannot bring a federal cause of action under § 1605A(c).  See Maalouf, 2020 WL 805726, at *6–7 (explaining that "the federal cause of action [under FSIA] is limited to claimants who are themselves citizens [of the United States], members of the armed forces, government contractors, or the legal representatives thereof," and that, as "non-U.S. national family members of victims of terrorist attacks," "plaintiffs do not satisfy this requirement"); see also Order (May 8, 2020) [ECF No. 55] at 2–3 (denying motion for reconsideration on this issue).  Moreover, "solatium[] . . . is not an independent cause of action, but rather is a form of damages" that is available to IIED claimants.  Reed v. Islamic Republic of

Iran, 439 F. Supp. 2d 53, 67–68 (D.D.C. 2006).  Thus, the Court will turn directly to plaintiffs' IIED claims under D.C. law.

D.C. law "enables foreign-national family members of terrorist attack victims" to bring IIED claims "to recover solatium damages when their allegations are reinforced by the evidence." Barry v. Islamic Republic of Iran, 437 F. Supp. 3d 15, 50 (D.D.C. 2020) (quoting Cohen v. Islamic Republic of Iran, 238 F. Supp. 3d 71, 86 (D.D.C. 2017)).  To prevail on an IIED claim, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant, which (2) either intentionally or recklessly, (3) causes the plaintiff severe emotional distress."  Opati v. Republic of Sudan, 60 F. Supp. 3d 68, 76 (D.D.C. 2014).  Although typically a plaintiff must also be "present at the time" of the injury, the presence requirement is waived in FSIA terrorism cases when a plaintiff is a "member[] of the injured victim's immediate family."  See Kinyua v. Republic of Sudan, 466 F. Supp. 3d 1, 9 (D.D.C. 2020); see also Republic of Sudan v. Owens, 194 A.3d 38, 44 (D.C. 2018) (concluding that, under D.C. law, "when § 1605A applies, the need for the presence requirement does not").

Under D.C. law, "a decedent's estate may pursue after the decedent's death a claim the decedent could have pursued but for his death."  Valore, 700 F. Supp. 2d at 81 (citing Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 53 (D.D.C. 2007)); see also D.C. Code § 12-101.  Hence, as the legal representative of their estates, see Henri Maalouf Decl. ¶ 6, Henri may bring survival actions on behalf of Gaby, Elias, and Olga as long as they could have brought IIED claims if they were alive today.

Here, Henri, Gaby, Elias, and Olga each satisfy the requirements to prevail on an IIED claim.  "[A]cts of terrorism are 'by their definition' extreme and outrageous conduct," Ewan v. Islamic Republic of Iran, 466 F. Supp. 3d 236, 246 (D.D.C. 2020) (quoting Mwila v. Islamic

9

Republic of Iran, 33 F. Supp. 3d 36, 40 (D.D.C. 2014)), and the Court has already concluded that Iran purposefully aided in perpetrating the 1984 Beirut embassy bombing through its material support to terrorist forces, see Doe, 808 F. Supp. 2d at 7; see also Barry, 437 F. Supp. 3d at 46 ("[T]he Court finds it self-evident that Iran's role in both the 1983 and 1984 bombings was 'intended to cause the highest degree of emotional distress.'" (quoting Estate of Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 26 (D.D.C. 2009)). All four individuals are members of Edward's immediate family: Henri and Gaby are Edward's brothers, and Elias and Olga were his parents. See Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 75 (D.D.C. 2010). And, as Henri's declaration sets forth in substantial detail, all four of them had close relationships with Edward before the attack and suffered significantly as a result of his death. See Henri Maalouf Decl. ¶¶ 18, 21–22, 24, 26, 37–39, 43–46; see also Ewan, 466 F. Supp. 3d at 246 (finding severe emotional distress element met where credible testimony "compellingly evidenced the close relationships" between the victim and plaintiffs before the attack and "the comfort and companionship [plaintiffs] lacked" thereafter); Barry, 437 F. Supp. 3d at 51 (showing of "immediate and ongoing pain and suffering for the family member[s]" was sufficient to demonstrate severe emotional distress).

The Court thus concludes that Iran is liable to all plaintiffs for IIED stemming from Edward's death in the 1984 Beirut embassy bombing.

### III. Damages

Plaintiffs seek compensatory damages and the costs of suit in the fourth amended complaint.[4] See Fourth Am. Compl. at 9–10. Solatium damages are awarded for IIED claims to

---

[4] Plaintiffs' first amended complaint also sought punitive damages and prejudgment interest on any award of compensatory damages. See First Am. Compl. ¶¶ 32–33, 36–37. However, because "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," see Fed. R. Civ. P. 54(c), and plaintiffs do not specifically demand these additional forms of relief in their fourth amended complaint, the Court will only

compensate for "[m]ental anguish, bereavement and grief" resulting from a loved one's death or injury. Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs., 892 F.3d 348, 356–57 (D.C. Cir. 2018) (quoting Flatow v. Islamic Republic of Iran, 999 F. Supp. 1, 30 (D.D.C. 1998)). The now-accepted framework in this District for awards of solatium damages in FSIA cases was first developed in Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). See Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d at 51 (D.D.C. 2007), abrogation on other grounds recognized in Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 65 (D.D.C.2013)). Under that framework, the standard damages awards for the immediate family members of a deceased victim of a terrorist attack are $5 million for parents and $2.5 million for siblings. See Mwila, 33 F. Supp. 3d at 44–45 (citing Peterson 515 F. Supp. 2d at 52); Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) (citing Heiser 466 F. Supp. 2d at 269). "These numbers, however, are not set in stone," and a court may award "greater amounts in cases with aggravating circumstances" or "depart downward in amount where the relationship between the claimant and the decedent is more attenuated." Valore, 700 F. Supp. 2d at 85–87 (quotation marks and citations omitted).

Here, plaintiffs request, and the special master recommends, awards that are consistent with the Heiser framework, namely $2.5 million for each brother and $5 million for each parent. See Special Master Report at 14; Fourth Am. Compl. ¶ C. The special master noted that the impact of Edward's death on his brothers and parents "has been profound and [] permanent." See Special Master Report at 14. That finding is borne out by the record. Henri describes the devastation that

---

consider plaintiffs' requests for compensatory damages and the costs of suit. See, e.g., Frost v. Islamic Republic of Iran, 419 F. Supp. 3d 112, 116 (D.D.C. 2020) ("Courts have invoked Rule 54(c) to deny . . . prejudgment interest on compensatory damage awards when that specific form of relief was not demanded in the complaint."); Kinyua, 466 F. Supp. 3d at 11 (denying punitive damages, despite "references to punitive damages in [plaintiffs'] complaint," because plaintiffs had not specifically sought punitive damages "under a viable cause of action").

he, Gaby, Elias, and Olga experienced as a result of Edward's death.  Henri was the one to identify Edward's body at the hospital and inform the family that Edward had been killed.  Henri Maalouf Decl. ¶¶ 35–36.  Henri recalls "s[itting] in a chair for three days, seeing the shadow of [his] brother circulating around [him]," and he still mourns Edward each year on the anniversary of his passing.  Id. ¶¶ 42, 49.  His father "could not go to work" and was "unable to get over the shock" of losing his son.  Id. ¶ 43.  "[H]is health deteriorated rapidly," and he died two years later "never having recovered" from his grief.  Id.  His mother was similarly "shattered," and her "health worsened dramatically" as well.  Id. ¶¶ 38, 45.  Gaby initially mourned Edward's death alongside his parents, but ultimately left home for work because he "could not stand the sadness" and "somebody had to provide for the family."  Id. ¶¶ 39, 46.  In the years that followed, the family continued to "set the table with a place for" Edward at every Sunday lunch and "prayed that he had gone to a better place."  Id. ¶ 47.  In sum, the Court agrees that the Heiser framework provides an appropriate measure of damages in this case, and thus will award $2.5 million each to Henri and Gaby's estate, and $5 million each to Elias and Olga's estates.

Henri finally requests compensation for "costs if equitable."  Fourth Am. Compl. ¶ 49.  But aside from referencing a need to pay his former attorney, see Resp. to Order of Ct. [ECF No. 60] at 4, he has "not provided any information regarding the fees and costs sought," and therefore, his "request is denied without prejudice."  Maalouf, 2020 WL 805726, at *7 (quoting Aceto v. Islamic Republic of Iran, Civ. A. No. 19-464 (BAH), 2020 WL 619925, at *23 (D.D.C. Feb. 7, 2020)).  Plaintiffs may, however, "file post-judgment motions for attorneys' fees in accordance with Federal Rule of Civil Procedure 54(d)(2)(B) and for costs in accordance with Federal Rule of Civil Procedure 54(d)(1)," if they so choose.  Id. (quoting Aceto, 2020 WL 619925, at *23).

**Conclusion**

For the foregoing reasons, the Court concludes that plaintiffs have demonstrated significant loss as a result of Iran's deliberate and extreme conduct in providing material support for the 1984 bombing of the U.S. embassy in Beirut.  The Court will therefore enter judgment for plaintiffs on their IIED claims and award plaintiffs a total of $15 million in compensatory damages.  A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: January 22, 2021